UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TINA MARIE LIMLE,

      Plaintiff,

v.                                                    CASE No. 8:12-CV-730-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.[2]  Because the decision of the Commissioner of Social

Security is supported by substantial evidence and the plaintiff has not shown

any reversible error, the decision will be affirmed.

_____

      [1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of
Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue
as defendant in this action.  See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

      [2]The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 12).

I.

The plaintiff, who was forty-one years old at the time of the administrative hearing and who has at least the equivalent of a high school education and reportedly has some college credits, has worked as a waitress, stock clerk, assembly press operator, hand packager, and an electronics tester (Tr. 103-04, 434, 599). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on July 11, 2008, due to bipolar disorder, schizophrenia, depression, anxiety, and GERD (Tr. 226, 227). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of bipolar disorder and inhalant abuse (Tr. 30). She concluded that, with these impairments, the plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following restrictions (Tr. 33-34):

> Mentally, the claimant is able to understand, remember and carry out simple one and two step instructions; the claimant is able to maintain concentration, persistence, and pace for two hour

intervals; the claimant is able to maintain regular attendance and complete a normal workweek; the claimant can only have brief and superficial interaction with co-workers; the claimant can only have occasional face-to-face interaction with the general public; the claimant can have occasional and routine supervision; the claimant has a slight limitation in ability to adapt to changes in the workplace; and the claimant can have no more than average production standards.

Based on the testimony of a vocational expert, the law judge determined that, despite the plaintiff's limitations, she could return to her past work as an assembly press operator and a hand packager (Tr. 38-39). Accordingly, the law judge ruled that the plaintiff was not disabled (Tr. 39). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.[3]

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical

---

[3]The plaintiff submitted new evidence to the Appeals Council from Boley Centers, Inc., regarding her mental functioning (Tr. 4). The Appeals Council stated it considered this evidence, but that it would not change the decision (Tr. 1-2). The plaintiff does not mention this additional evidence in her memorandum and, therefore, there is no challenge to the Appeals Council's determination (see Doc. 14, p. 2).

or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

As both parties indicate in their memoranda, the plaintiff has a significant history of mental illness and drug abuse which dates back to at least 2001. Nevertheless, the plaintiff was gainfully employed for most of the period from 2001 to 2008. The current disability applications pertain to the time period commencing on July 11, 2008, soon after she lost her job as a waitress because the restaurant where she was employed had closed (Tr. 68-69). As indicated, the law judge found that, although the plaintiff had substantial mental functional limitations due to bipolar disorder, she was not disabled within the meaning of the Social Security Act during the pertinent time period (Tr. 33, 38-39). The plaintiff asserts two arguments in support of a reversal of the Commissioner's decision. Neither is meritorious.

A. The plaintiff argues first that the law judge improperly discounted the opinions of consultative psychiatrist Dr. Karl D. Jones and nurse practitioner Susan Martinieri (Doc. 14, pp. 15-19).[4]

---

[4]References to the plaintiff's memoranda refer to the page numbers assigned by CM/ECF.

The plaintiff underwent a one-time evaluation with Dr. Jones on August 2, 2010 (Tr. 591). On that date, Dr. Jones placed a check mark on a document indicating his agreement with the following statement (Tr. 603):

> I hereby state that the above-noted individual has been a patient of mine and, in my best medical opinion, is totally disabled without consideration of any past or present drug and/or alcohol use.

Dr. Jones stated his opinion is "[b]ased on single 1ˢᵗ eval [and] review of l[ar]ge am[oun]ts of past t[rea]tm[en]t records" (id.). Further, Dr. Jones opined in a psychiatric report that, due to bipolar disorder and a dependent-type personality, the plaintiff is markedly limited in activities of daily living, social functioning, concentration and adaptation (Tr. 600-01). Dr. Jones additionally completed a Psychiatric/Psychological Impairment Questionnaire which lists 20 tasks related to understanding and memory, concentration and persistence, social interactions, and adaptation (see Tr. 607-09). With regard to all 20 tasks, Dr. Jones placed a check mark indicating that the plaintiff is "markedly impaired" which means, according to the Questionnaire, that the plaintiff is "effectively preclude[d] ... from performing the activity in a meaningful manner" (Tr. 606).

The law judge acknowledged in his decision Dr. Jones's evaluation of the plaintiff and his review of her treatment records (Tr. 37). The law judge gave Dr. Jones's assessment "very little weight" and explained that determination as follows (id.):

> Dr. Jones only examined the claimant on one occasion (Exhibit 23F). The one-time examination appears to heavily weigh[] on the claimant's statements. The term "disabled" is a legal conclusion reserved for the Commissioner (20 CFR 404.1527(e) and 416.927(e)). Dr. Jones['s] statement of "disabled" is conclusory and not supported by his GAF rating of 50. Additionally, Dr. Jones['s] own Diagnostic Impression indicates poor compliance with care. (Exhibit 23F).

This explanation provided an adequate basis for discounting the opinion of Dr. Jones, and it is supported by substantial evidence. Significantly, as a one-time examining consultant, Dr. Jones's opinion is not entitled to controlling weight or special significance. See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Further, Dr. Jones's opinion that the plaintiff is "totally disabled" is not even a medical opinion, but rather opines on a vocational issue reserved to the Commissioner. 20

C.F.R. 404.1527(d), 416.927(d); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11ᵗʰ Cir. 2007).

Moreover, Dr. Jones's opinion that the plaintiff is totally disabled and has marked mental limitations in all major functional areas is not compelled by Dr. Jones's evaluation or the overall record.  For example, the law judge pointed out that Dr. Jones's assessment of total disability is not supported by his assessment of a GAF score of 50 (Tr. 599).  The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4ᵗʰ ed., Text Revision),  p. 34. A rating of 50 is at the top of the range (41-50) of serious impairments in social, occupational or school functioning.  Id.  It has been held that a GAF score of "50 ... indicates [that a plaintiff] could perform some substantial gainful activity." Hillman v. Barnhart, 48 Fed. Appx. 26, 30 n.1 (3d Cir. 2002); see also Jones v. Astrue, 494 F.Supp.2d 1284, 1288 (N.D. Ala. 2007); Speagle v. Astrue, 2010 WL 750341 at *10 (M.D. Fla. 2010).   Such a conclusion is reasonable in this case, considering Dr. Jones's findings on mental status examination that the plaintiff's cognitive functioning is within

normal limits, her memory is intact in all spheres (although "limitedly"), she has average intelligence, fair insight and judgment, she is not a homicidal/ suicidal risk, and shows no evidence of hallucinations (Tr. 588, 599).[5] See 20 C.F.R. 404.1527(c)(3), 416.927(c)(3) (an opinion supported by medical signs is given greater weight). In sum, the law judge could reasonably conclude in this instance that the GAF score of 50 did not support a finding of total disability.

Furthermore, Dr. Jones's opinion that the plaintiff is "totally disabled" is also not compelled by the overall record. As the law judge mentioned repeatedly in the decision (Tr. 31, 36, 38), the GAF scores assigned to the plaintiff during the period of alleged disability were primarily in the mid-50's (Tr. 474, 475, 534, 536, 537, 538, 619, 621, 622), which are consistent with the law judge's findings of moderate mental functional limitations.[6]   Notably, the plaintiff was assessed a GAF score of 63 (which

---

[5]It is noted that in Dr. Jones's handwritten notes of his evaluation he describes the plaintiff's insight/judgment as "fair," but states "poor" in the typewritten report (Tr. 588, 599).

[6]A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circum-stantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers") (Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34).

reflects only mild mental symptoms) just weeks prior to Dr. Jones's evaluation of the plaintiff (Tr. 613).[7]

Additionally, the law judge noted correctly that the treatment notes during the alleged disability period were not consistent with disabling mental limitations (see Tr. 33, 36, 37, 38), as most of them reflect that the plaintiff was interactive and pleasant with no abnormal movements, cognitive functioning was intact, her thought process was logical and organized, and there was an absence of hallucinations, psychosis, and suicidal or homicidal thoughts (see, e.g., Tr. 534, 536, 537, 538, 613, 615, 619, 621, 622). Moreover, as the law judge mentioned in his decision, case worker Rose Berg stated that the plaintiff's daily activities included riding the bus, visiting the library, and going to appointments (Tr. 35). These activities are also inconsistent with Dr. Jones's opinion that she is "totally disabled" and "needs a guardian" (Tr. 600, 611). It is also noted that Dr. Jones's opinion that the plaintiff has been "totally disabled" since September 2001 (Tr. 611) is

---

[7]A rating of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ..., but generally functioning pretty well, has some meaningful interpersonal relationships" (Diagnostic and Statistical Manual of Mental Disorders. (DSM-IV-TR) (4th ed., Text Revision), p. 34).

contradicted by evidence that, between that time and the loss of her job as a waitress in July 2008, the plaintiff had purchased a home and was gainfully employed (Tr. 76, 192-94, 538).

The law judge also discounted the weight given to Dr. Jones's opinion because Dr. Jones's evaluation "appears to heavily weigh[] on the claimant's statements" (Tr. 37). The law judge could reasonably conclude that Dr. Jones's reliance on the plaintiff's subjective complaints during this one-time evaluation undermines the probative value of Dr. Jones's opinion because the law judge found the plaintiff only partially credible. That credibility determination, as discussed below, is supported by substantial evidence. In sum, the law judge gave ample cause for discounting the opinion of consultative examiner Dr. Jones.

The plaintiff unpersuasively contends that the law judge gave "[n]o valid reasons" for discounting Dr. Jones's opinion (Doc. 14, p. 17). In this connection, the plaintiff argues first that Dr. Jones's one-time examination of the plaintiff "alone is not a valid reason ... to diminish the weight to which his opinion is due" (id., p. 15). This is clearly not so. The opinion of a treating physician is entitled to substantial or considerable

-12-

weight unless good cause is shown for not giving the opinion such weight. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1987). However, as stated above, a one-time examining physician's opinion is not entitled to any special weight. See also Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008). The regulations direct the law judge to consider the number of times a medical source examines a claimant in determining the weight to give that medical opinion, as a medical source who has seen a claimant frequently is more likely to have a detailed and longitudinal perspective of the plaintiff's impairments, which the regulations indicate is significant. 20 C.F.R. 404.1527(c)(2), 416.927(c).

The plaintiff also argues that Dr. Jones's opinion is presumptively entitled to more weight than that of a nonexamining source (Doc. 14, p. 15). However, when the law judge properly discounts the opinion of an examining (or even a treating) physician, the law judge may give substantial weight to the opinion of a nonexamining reviewing source who is considered an expert in Social Security disability evaluation and whose opinion is consistent with the overall record. Oldham v. Schweiker, 660 F.2d 1078, 1086 (5th Cir. 1981); Milner v. Barnhart, supra, 275 Fed.

-13-

Appx. at 948; 20 C.F.R. 404.1527(e)(2)(i), 416.927(e)(2)(i). Here, the law judge found that the nonexamining reviewing psychologists' opinions are "consistent with the medical evidence as a whole" and, in particular, the treatment records, moderate GAF scores, and the lack of hospitalizations during the alleged disability period (Tr. 38). Therefore, the law judge could appropriately give more weight to the psychological reviewers in this case. Notably, one of the reviewing psychologists, Dr. Mike Dow, set forth in detail the information he considered in arriving at his opinion (Tr. 503).

The plaintiff argues further that "[t]here is simply no evidentiary support" for the law judge's finding that Dr. Jones's opinion appeared to rely heavily on the plaintiff's statements, and that such a conclusion is belied by "the findings yielded by [Dr. Jones's] own examination as well as his interpretation of the source evidence he reviewed and summarized" (Doc. 14, p. 16). However, Dr. Jones states that his opinions are based partly on the "single first 1ˢᵗ eval" (Tr. 603, see also Tr. 600), which included the plaintiff's statements of her history and subjective complaints of mental health symptoms and functioning (see Tr. 597-99, 605). Furthermore, although Dr. Jones's evaluation included a "record review" (Tr. 591), the majority of the

records he referenced preceded the alleged disability period. Notably absent from Dr. Jones's evaluation is any mention of the numerous psychiatric progress notes from the alleged disability period by nurse Martinieri at Directions for Mental Health, Inc., who the plaintiff states provided "the only extensive evidence of [the plaintiff's] mental condition over the course of the period at issue" (Doc. 14, p. 19).[8] Therefore, it cannot be concluded that Dr. Jones considered these pertinent records in opining on the plaintiff's functioning during the alleged disability period.  In sum, the law judge reasonably found that Dr. Jones's opinion of total disability relied heavily upon the plaintiff's statements.

The plaintiff also challenges the law judge's statement that Dr. Jones's opinion that the plaintiff is "disabled" is conclusory and concerns a vocational matter reserved for the Commissioner (id., p. 16; see Tr. 37). However, Dr. Jones did opine repeatedly that the plaintiff is "totally disabled" (Tr. 601, 603, 609).  Therefore, the law judge appropriately cited to the regulations indicating that such an opinion is a matter for the Commissioner

---

[8]The only reference in the records review to nurse Martinieri is a 2009 treatment plan, which Dr. Jones appears to inaccurately summarize by including comments from a 2007 evaluation (compare Tr. 592 with Tr. 435).

-15-

because it is an administrative finding that is dispositive of the case. 20 C.F.R. 404.1527(d), 416.927(d). In other words, it is the Commissioner's duty to determine whether a claimant's condition meets the statutory definition of disability. 20 C.F.R. 404.1927(d)(1), 416.927(d)(1).

The plaintiff argues further that Dr. Jones did not "simply conclude[]" the plaintiff is "disabled," but also "rendered specific findings regarding the areas in which her conditions limit her mental function" (Doc. 14, p. 16). However, Dr. Jones's opinion in this regard merely consists of checkmarks on a questionnaire that the plaintiff is "markedly limited" in performing 20 varied mental activities, without meaningfully addressing the basis for these extreme limitations (see Tr. 607-09). An explanation is important considering that the record patently contradicts portions of that opinion. For example, there is no apparent basis in the evidence for the opinion that the plaintiff is markedly limited in the ability to understand and remember one- or two-step instructions (Tr. 607). In addition, Dr. Jones opines that the plaintiff's ability to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness" is "markedly limited" (Tr. 608). However, treatment records from the pertinent time period

-16-

regularly document that the plaintiff is "[a]ppropriately dressed, groomed, [and has] good hygiene" and that she is pleasant, interactive, and cooperative (see, e.g., Tr. 474, 476, 536-38, 613-21). Further, Dr. Jones's opinion that the plaintiff is "[m]arkedly limited" in "[t]he ability to ask simple questions or request assistance" and "to travel to unfamiliar places or use public transportation" (Tr. 608, 609) is undermined by evidence that the plaintiff made requests for assistance and changes in medication (see Tr. 474, 538, 624) and the testimony of plaintiff's mental health advocate, Rose Berg, who stated that the plaintiff spent her days attending  appointments and going places such as the library, and that she traveled independently on the bus (Tr. 93). Consequently, the law judge could reasonably conclude that Dr. Jones merely checked "markedly limited" to all of the 20 mental activities without giving meaningful thought to each specific activity.

The plaintiff argues next that the law judge mistakenly asserted that Dr. Jones's opinions "are inconsistent with [Dr. Jones's] assignment of a GAF score of 50" (Doc. 14, p. 17). However, the law judge did not state that a GAF score of 50 is "inconsistent" with Dr. Jones's opinion; rather, the law judge found that Dr. Jones's statement that the plaintiff is totally disabled

-17-

is "not supported by his GAF rating of 50" (Tr. 37). As discussed above, pp. 9-10, the law judge could reasonably conclude that a GAF of 50 does not support a finding that the plaintiff is "totally disabled."

The plaintiff also challenges the law judge's comment that Dr. Jones opined that the plaintiff has "poor compliance with care" (Doc. 14, p. 17). The plaintiff argues that this comment is inaccurate, as she has allegedly been compliant with her medication regimen since early 2009 (id.). However, the law judge was merely repeating Dr. Jones's statement that the plaintiff had "[p]oor compliance with care" (Tr. 600).

In sum, the law judge has stated adequate reasons for discounting Dr. Jones's opinion of total disability, and those reasons are supported by substantial evidence. The plaintiff's disagreement with the law judge essentially is a difference of opinion as to the weight to be given to certain circumstances. The law judge, however, is given the responsibility to assess those circumstances so that the plaintiff's different opinion must yield. In all events, the plaintiff has not identified any evidence which compelled the law judge to accept Dr. Jones's opinion. See Adefemi v. Ashcroft, supra.

Accordingly, the plaintiff's argument that the law judge committed reversible error in discounting Dr. Jones's opinion is unavailing.

Next, the plaintiff argues that the law judge improperly discounted nurse practitioner Martinieri's statement that "in my best medical opinion, [the plaintiff] is totally disabled without consideration of any past or present drug and/or alcohol use" (Doc. 14, pp. 18-19; see Tr. 531). Medical director James E. Zenel co-signed the statement (Tr. 531). Martinieri was the plaintiff's primary source of mental health treatment during the alleged disability period. She oversaw the plaintiff's medication management and regularly conducted medical status examinations of the plaintiff.

The law judge acknowledged Martinieri's opinion that the plaintiff was totally disabled, but gave the opinion "very little weight" (Tr. 37). The law judge gave a cogent explanation for this finding (id.):

> The statement is conclusory. Additionally, the statement is inconsistent with the GAF scores, mental status examinations, and treatment records. The claimant has had no formal counseling and no hospitalizations since July 2008. Furthermore, the term "disabled" is a legal conclusion reserved for the Commissioner (20 CFR 404.1527(e) and 416.927(e)).

This explanation provides ample cause for discounting Martinieri's opinion. Initially, it is noted that, as a nurse practitioner, Martinieri is considered an "other[] source" whose opinion is not entitled to the same weight as an acceptable source, such as a psychiatrist or psychologist. 20 C.F.R. 404.1513(d)(1), 416.913(d)(1). The fact that Martinieri was not an acceptable medical source provides a valid basis to discount her opinion. Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998), cert. denied, 524 U.S. 1124 (1999). Furthermore, the law judge's explanation for rejecting Martinieri's opinion of disability would have been sufficient to reject even a treating physician's opinion. See Lewis v. Callahan, supra, 125 F.3d at 1440 (a treating physician's opinion may be rejected when the opinion is conclusory or inconsistent with the physician's own medical records or where the evidence supported a contrary finding).

In addition, the explanation is supported by substantial evidence. Thus, the law judge correctly states that Martinieri's opinion that the plaintiff is totally disabled is conclusory, as she fails to provide any explanation for this opinion. Such an explanation is especially important in this circumstance because, as the law judge points out, Martinieri's treatment records are

inconsistent with a finding of total disability. Thus, as discussed above, pp. 10-11, the great majority of GAF scores assigned to the plaintiff by Martinieri were 55, which indicates moderate, and not disabling, mental limitations. Further, Martinieri's mental status examinations regularly reflect that the plaintiff was pleasant and interactive, her cognitive functioning was intact, her thought process was logical and organized, and there was no evidence of hallucinations, psychosis, and suicidal/homicidal thoughts (see, e.g., Tr. 534, 536, 537, 538, 613, 615, 619, 621, 622). In sum, although Martinieri's treatment notes do not indicate that the plaintiff is without mental limitations, the law judge could reasonably conclude that Martinieri's treatment notes do not support her opinion of total disability.

The plaintiff contends that the law judge's "stated rationales are not sufficient by which to grant [Martinieri's] opinions no weight" (Doc. 14, p. 18). In this regard, the plaintiff argues that the law judge erroneously "dismiss[es Martinieri's] statement entirely as ... a meaningless and impermissible conclusion of disability" (id.). However, on its face, the statement is conclusory, and it does opine on a vocational issue reserved to the Commissioner. 20 C.F.R. 404.1527(d), 416.927(d).

-21-

The plaintiff also speculates that "[t]he statement is intended less as absolute proof of [the plaintiff's] disability than as an opinion regarding the effect of her history of substance abuse on her ability to function" (Doc. 14, p. 18). Notably, the plaintiff asserts that her "pre-onset hospitalizations" seem specifically related to her drug abuse (id., p. 21). Regardless, if the primary purpose of the statement concerns substance abuse, it is irrelevant, as the law judge did not find that the plaintiff is disabled due to drug abuse.

The plaintiff contends further that the law judge's finding of an inconsistency between Martinieri's opinion that the plaintiff is "totally disabled" and her treatment notes is an "unreasoned assertion" (id., p. 18). In this connection, the plaintiff argues that her "treatment notes [between July of 2007 and June of 2010], paint a picture of a consistent struggle against depression and mania, with her condition only seemingly 'stabilized' for brief periods of time" (id.). However, Martinieri's treatment notes during the alleged disability period do not show a greatly fluctuating mental state. Thus, most of the GAF scores during the pertinent time period remained steady at 55 (see, e.g., Tr. 474-76, 534-38, 613-23) which indicates moderate mental

symptoms.[9]   Additionally, despite the plaintiff's subjective complaints of mental symptoms, the mental status examinations regularly reflect that the plaintiff's cognitive functioning remained intact, her thought process was logical and organized, and there was an absence of hallucinations, psychosis, and suicidal or homicidal thoughts (see, e.g., Tr. 534, 536, 537, 538, 613, 615, 619, 621, 622).

The plaintiff argues next that the law judge improperly asserted that the plaintiff "has had no formal counseling and no hospitalizations since July of 2008" (Doc. 14, p. 19, citing Tr. 37).   However, the law judge was correct that the plaintiff has not had any other hospitalizations since then (see Tr. 69).  Furthermore, the treatment records from the alleged disability period consist of 15-minute medical management appointments with the nurse practitioner and no appointments with a doctor (see, e.g., Tr. 476).  Therefore, the law judge's statement is accurate.

The plaintiff contends also that her lack of treatment is an improper consideration because she lacked the financial ability to obtain

---

[9]In support of her argument, the plaintiff cites to treatment records from 2007, one year prior to the commencement of her alleged disability period, but does not show that those records were relevant to her mental functioning during the alleged disability period.

treatment from an acceptable medical source (Doc. 14, p. 19). However, case manager Rose Berg testified that Directions for Mental Health (where the plaintiff was receiving free treatment) has psychiatrists on staff, and offers formal therapy on an emergency basis, but Berg did not know why the plaintiff had not received such treatment (Tr. 94-97). Therefore, the law judge could reasonably conclude that the plaintiff's condition was not so severe to warrant that intervention.

The plaintiff also argues that the law judge "entirely dismiss[ed] nurse Martinieri's clinical findings [and] GAF assessments" which is "the only extensive evidence of [the plaintiff's] mental condition over the course of the period at issue" (Doc. 14, p. 19). This contention is baseless, as the law judge credits Martinieri's treatment records and GAF scores showing moderate limitations in determining that the plaintiff has moderate limitations in social functioning and concentration, persistence or pace (see Tr. 38). Thus, the law judge merely rejected Martinieri's conclusory and unsupported opinion that the plaintiff is "totally disabled."

Finally, as a sub-issue in this argument, the plaintiff contends that the law judge failed to incorporate into her residual functional capacity the

-24-

opinions of psychological consultants to whom the law judge stated he gave "significant weight" (Doc. 14, pp. 19-20).   This contention is similarly meritless.

Nonexamining reviewing psychologists Timothy Foster, Ph.D., and Mike Dow, Ph.D., opined that the plaintiff had moderate limitations in social functioning and in concentration, persistence or pace (Tr. 501, 576). Significantly, each specified that the plaintiff's moderate limitations in these areas did not preclude her from engaging in substantial gainful work activity. Thus, Dr. Dow opined that, notwithstanding the plaintiff's moderate limitations (Tr. 507):

> She can understand instructions and recall work procedures.   She can get along with others.   She can concentrate, attend, persist with no more than moderate mental limits.   She can adapt to the requirements of the workplace.

Similarly, Dr. Foster stated, among other things, that the plaintiff "is able to understand, remember and carry out simple one and two step instructions"; she "is able to sustain concentrated, task oriented activity"; she is "able to maintain CPP for two hour intervals"; and "is able to accept instructions and respond appropriately to criticism" (Tr. 582).

The law judge gave the opinions of the psychological consultants significant, but not controlling, weight and included in the residual functional capacity the following mental limitations to accommodate for those deficits she found supported by the record (Tr. 33):

> [T]he claimant is able to understand, remember and carry out simple one and two step instructions; the claimant is able to maintain concentration, persistence, and pace for two hour intervals; the claimant is able to maintain regular attendance and complete a normal workweek; the claimant can only have brief and superficial interaction with co-workers; the claimant can only have occasional face-to-face interaction with the general public; the claimant can have occasional and routine supervision; the claimant has a slight limitation in ability to adapt to changes in the workplace; and the claimant can have no more than average production standards.

Thus, the law judge expressly included, or made accommodations for, virtually all of the limitations opined by the psychological consultants in the residual functional capacity (compare Tr. 33 with Tr. 507, 582). Further, she explained in the decision her reason for finding that the plaintiff was capable of maintaining regular attendance (see Tr. 35-36).

The determination of the plaintiff's functional limitations in assessing the plaintiff's residual functional capacity is an issue reserved to the

-26-

Commissioner.  20 C.F.R. 404.1527(d)(2), 416.927(d)(2).  In making this determination, the law judge stated that she carefully considered the entire record (Tr. 33), and the plaintiff has not cited to any legal authority indicating that the residual functional capacity must match the findings of a particular medical source.  Therefore, the plaintiff's challenge to the law judge's determination of the plaintiff's residual functional capacity is meritless.

B.  The plaintiff's second argument is that the law judge improperly discounted her credibility (Doc. 14, pp. 20-22).  The plaintiff testified at the hearing that she cannot work due to her mental impairments (Tr. 54).  Specifically, the plaintiff stated that she constantly hears voices and was "Baker Acted" on multiple occasions (Tr. 54,74-75, 77).  She testified further that she sits around during the day and does not "talk to anyone" (Tr. 61, 67).  She alleges that she is anxious, often depressed, and has crying spells (Tr. 61, 65, 68).  She added that she has had manic episodes, and she is afraid of what she may do if she has another manic episode (Tr. 76-77).

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints.  As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the

pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively determined medical condition which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge referred to the pertinent regulations and Social Security Rulings governing the assessment of subjective complaints (Tr. 34). Moreover, she set forth the proper steps for determining credibility (id.). This demonstrates that the law judge appropriately applied the governing standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge accurately summarized in the decision the plaintiff's testimony, and acknowledged the plaintiff's allegation that she cannot work due to her bipolar disorder (Tr. 34-35). The law judge, however, did not find the plaintiff was fully credible. Thus, the law judge concluded

that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment" (Tr. 35).

The law judge then gave a detailed explanation for her credibility finding. First, she stated (Tr. 35-36):

> Throughout the hearing, the claimant provided contradictory testimony. Additionally, the claimant's description of symptoms has been quite vague and general, lacking the specificity that might otherwise make it more convincing. The claimant's testimony regarding her daily activities was contradicted by the testimony of her caseworker, Rose Berg. While the claimant testified that she just sat around all day at Mustard Seed and Pinellas Hope, Ms. Berg testified that the claimant rode the bus, visited the library, went to appointments, and occasionally visited her mother. Additionally, the claimant testified that she did not hear voices during the year she lived at Mustard Seed. She testified that the heat caused the voices to return when she moved to Pinellas Hope. However, when her representative questioned her, the claimant testified that the voices never left. The inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.
>
> ....

The claimant alleged that her mental impairment prevents her from working. However, the record demonstrates the claimant worked while having mental diagnoses. Although the claimant was hospitalized on multiple occasions during the earlier part of the decade, she continued to work. At the hearing, the claimant testified that she never missed work in 2008 because of her mental impairment. The claimant stopped working in 2008 when her employer went out of business. Furthermore, the claimant admitted that her condition has not worsened since her initial disability report (Exhibit 17E). Since the claimant testified that she has not previously missed work due to her symptoms, the undersigned finds that the claimant is able to maintain regular attendance.

Furthermore, the law judge emphasized that the treatment notes do not support the plaintiff's allegations of disabling mental symptoms (Tr. 36; see also Tr. 31, 33). In this connection, the law judge mentioned that the plaintiff's treatment notes from the pertinent time period reflected GAF scores consistently in the mid-fifties, in addition to a GAF score of 63 in June 2010, which indicates only mild symptoms (Tr. 31, 36). The law judge also noted, in particular, several treatment notes from the pertinent time period which reflected a more stable mood and only mild depression (Tr. 36).

Moreover, the law judge pointed out that it is unclear whether the plaintiff's manic episodes were caused by substance abuse or bipolar disorder

(Tr. 31, 35, 36; see Tr. 379, 452). The plaintiff, in fact, concedes that her "pre-onset hospitalizations ... seem specifically related to her drug abuse," which involved typically the inhaling of nitrous oxide (Doc. 14, p. 21). In addition, the law judge noted that, with regard to her sole hospitalization during the alleged disability period, a nitrous oxide burn (consistent with inhalant abuse) was observed on her leg (Tr. 35, see Tr. 452).[10] Moreover, as discussed above, pp. 23-24, the law judge noted that the plaintiff's conservative treatment, which consisted of appointments with a psychiatric nurse for medication management, also does not support her contention of debilitating mental limitations (Tr. 36). The law judge then summarized the evidence as follows (Tr. 38):

> Although the claimant alleged severe mental impairments, there have not been any hospitalizations since July of 2008. Additionally, the claimant provided inconsistent testimony. Furthermore, the claimant's treating doctors expected that she would be functional if she re[fr]ained from drug use and continued her psychiatric treatment. Lastly, the claimant's GAF ratings indicate that the claimant's functioning

---

[10]Further, although the plaintiff denied at the time of the hospitalization the use of drugs, a drug screen was positive for benzodiazepines at that time as well (Tr. 449).

[limitations] are moderate rather than severely limited.

This explanation, which is supported by substantial evidence, is more than adequate to discount the plaintiff's subjective allegations of disabling mental limitations. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

Notably, the law judge did not fully discredit the plaintiff's complaints of mental symptoms. Thus, the law judge found that the plaintiff has a severe impairment of bipolar disorder (Tr. 30), which causes moderate limitations in social functioning and concentration, persistence or pace (Tr. 32; see also Tr. 36). In order to accommodate these deficits, the law judge substantially restricted the plaintiff to jobs with simple one and two step instructions; limited interaction with co-workers, supervisors and the general public; no more than average production standards; a maximum of two hours of concentration at a time; and with a slight limitation in the ability to adapt to changes in the workplace (Tr. 33-34).

The plaintiff baselessly argues that "none of the reasons proffered by the ALJ for disbelieving [the plaintiff's] claim of disability actually undermines her veracity" (Doc. 14, p. 22). However, it is noted that the

plaintiff does not even address her contradictory testimony at the hearing, which was a primary reason for finding that the plaintiff was not fully credible (Tr. 35, 38).

The plaintiff argues that, in making her credibility determination, the law judge should not have considered her continued employment after she received her diagnosis of bipolar disorder in 2001 because it "implies nothing regarding the extent and nature of her illness from the point at which she alleges it became disabling, in July 2008" (Doc. 14, p. 21). Significantly, the plaintiff's memorandum is replete with references to pre-disability period medical records in support of her disability claim (see id., pp. 2-8, 18, 21, 22). Regardless, the law judge could reasonably find that the plaintiff's ability to continue gainful employment despite her bipolar disorder and hospitalizations is probative of the credibility of her allegations of total disability, especially considering that the plaintiff stopped working immediately before the commencement of the disability period not due to mental illness, but because her employer went out of business. In all events, the law judge's notation of this circumstance was not the thrust of her credibility determination. Rather, the law judge indicated that her primary reasons were the plaintiff's

-33-

inconsistent testimony and the medical records that did not support disabling limitations (see Tr. 36, 38).

The plaintiff challenges the law judge's consideration of the lack of more hospitalizations since the onset of the disability period (Doc. 14, p. 21). As indicated, only one of her hospitalizations occurred during the alleged disability period and that was brief and at the beginning of the period (id.). The law judge could reasonably conclude that the absence of additional hospitalizations indicated that the plaintiff's mental impairment was not disabling.

The plaintiff argues further that the circumstance "[t]hat her post-onset condition has not warranted hospitalization does not imply that it is so well-controlled that it must allow her to work" (id.). In this regard, the plaintiff argues that she has "struggled with a resumption of manic episodes, characterized by racing thoughts, inability to sleep, impulsive behavior, pressured speech, anxiety and nervousness," and that the law judge cited to "only the most benign portions of the treatment record [which] does not provide an accurate account of her condition over the period at issue" (id., pp. 21-22, citing Tr. 467-90, 615-23). However, many of the plaintiff's citations

reference subjective complaints prior to the onset of the alleged disability period. Furthermore, although the treatment notes reflect that the plaintiff asserted various subjective complaints, such as racing thoughts and feeling "manicky," as discussed above the mental status examinations and GAF scores overall did not indicate that those mental symptoms were disabling (see, e.g., Tr. 467, 474-85, 613-23). For example, the plaintiff cites to an August 2008 treatment note in which she complained of, among other symptoms, racing thoughts and poor concentration (Doc. 14, p. 21). However, notwithstanding these symptoms, her mental status exam showed she remained functional; thus, her cognitive functioning was intact, her thought process was logical and organized, she was pleasant and cooperative with no abnormal movements, and there was no evidence of hallucinations, paranoia, delusions, psychosis, and violent thoughts (Tr. 474). She was assessed a GAF score of 55 reflecting moderate limitations (id.).

Significantly, the issue is not whether the record could support a finding of disability, but whether the evidence compels that finding. See Adefemi v. Ashcroft, supra. The evidence in this case clearly does not compel a finding of mental disability.

In sum, the law judge articulated reasons for her credibility determination that were rational and supported by the record. Furthermore, the law judge did not completely reject the plaintiff's complaints of mental symptoms. To the contrary, she substantially restricted her to simple jobs which required no more than two hours of concentration at a time and limited interaction with co-workers and the public. Accordingly, this court is not authorized to overturn her credibility finding. Arnold v. Heckler, 732 F.2d 881, 883-84 (11th Cir. 1984).

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 8th day of July, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-36-